## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BREELAND,** | : | **Civil No. 3:12-CV-84** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Kosik)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SUP'T JOHN FISHER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, a state prisoner currently housed in the State Correctional Institution Camp Hill, who is proceeding *pro se*, first commenced this action by filing a complaint on January 13, 2012. (Doc. 1.)  Breeland's complaint initially named ten defendants, in a multi-faceted pleading which was 100 pages in length and contained a series of broadly framed, and vaguely articulated claims.  (Id.)  The defendants filed a motion to dismiss this complaint, or in the alternative for a more definite statement, on April 2, 2012. (Docs. 34 and 35.)  On April 24, 2012, Breeland responded by filing an amended complaint, (Doc. 38.),which more nearly fit Rule 8's ideal of a proper complaint; namely:  "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." F.R. Civ. P. Rule 8(a). This amended complaint named three defendants–Correctional Officers Anders and Vogt, along with Nurse Mary–and articulated in 7 concise pages a claim of Eighth Amendment violations based upon the alleged use of excessive force and deliberate indifference to serious medical needs arising out of an incident which allegedly occurred at the State Correctional Institution Smithfield, in September 2011. (Doc. 38.)

Yet, while Breeland's lawsuit relates exclusively to matters occurring in the Fall of 2011 at SCI Smithfield, Breeland has recently filed four separate motions in this action seeking extraordinary injunctive relief from prison officials at SCI Camp Hill. In these motions, which have been captioned as motions for preliminary injunction, (Docs. 43 and 46.), and motions for relief from retaliation and for sanctions (Docs. 63 and 64.), Breeland alleges that he has had suicidal episodes while housed at SCI Camp Hill, and has been involved in physical encounters with correctional staff who have been compelled to place him in psychiatric observation cells and in a restraint chair. (Id.) Breeland also complains that prison officials have failed to treat various ailments he has experienced, have limited his law library access and have retaliated against him in various other unidentified ways. (Id.) On the basis of these far reaching

allegations, Breeland asks this court to intervene and order his transfer to some other institution, as well as prescribing outside medical treatment for this inmate. (Id.)

The defendants have responded to these allegations by detailing the close medical and psychiatric oversight that prison officials are exercising in Breeland's case, and by describing the efforts being undertaken by correctional staff to ensure Breeland's continued access to the courts.  (Docs. 53 and 54.)  These records confirm that Breeland has continuing access to the prison law library, reveal that Breeland has been seen by medical and psychiatric staff at the prison on approximately 30 occasions over the past six months, and further disclose that medical staff stand ready to immediately address any of Breeland's medical and mental health needs.  (Id.)

While Breeland's pleadings reveal that he is subject to episodes of extreme emotional distress which may require medical intervention, these pleadings also disclose that prison staff are well aware of Breeland's medical needs, and are actively attempting to address those needs.  In this setting, where a plaintiff's concerns are primarily medical, rather than legal in nature, and prison health care providers are working to meet those medical needs, intervention in these medical matters by judicial fiat seems unnecessary and inappropriate.  Accordingly, for the reasons set forth below, it is recommended that these motions be denied, without prejudice.

## II.   Discussion

### A.   Rule 65–Standards for Preliminary Injunction

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:  "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting  SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)).  See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir.2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa.  Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right.  Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982)(affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials).  It is an

extraordinary remedy.  Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.  As a threshold matter, "it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." Emile, 2006 WL 2773261, at *6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir. 1992)).  Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

> Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Rule 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted.  Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443.  If the movant fails to carry his burden on either of these elements, the motion should be denied since a party seeking such relief must

"demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)). Similarly, to the extent that Breeland seeks permanent injunctive relief, he must make a specific and precise legal showing.  "A court may issue a permanent injunction [only] where the moving party has demonstrated that:  (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief. Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844 (3d Cir.1984)." Chao v. Rothermel, 327 F.3d 223, 228 (3d Cir. 2003).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute.  Specifically, 18 U.S.C. §3626, limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

> 18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where Breeland:  (1) seeks to enjoin a wide-array of non-parties; (2) seeks relief of a permanent or ongoing nature; and (3) requests relief which goes beyond  merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials.  Each of these aspects of Breeland's  prayer for injunctive relief presents separate problems and concerns.

For example, injunctions against non-parties, like the injunctions sought here by Breeland, require a specific and compelling legal showing.  To the extent that Breeland seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought.  Fed.R.Civ.P. 65(d)."  Elliott v. Kiesewetter,  98 F.3d 47, 56 (3d Cir. 1996).

Moreover, where a plaintiff seeks injunctive relief of a presumably permanent nature, as Breeland does in this case, the plaintiff's failure to timely exhaust his administrative remedies may have substantive significance since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range  of inmate complaints, including complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement.  Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.  Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance

process before proceeding into federal court. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).   Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; <u>see, e.g.</u>, <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000); <u>Bolla v. Strickland</u>, 304 F. App'x 22 (3d Cir. 2008); <u>Jetter v. Beard</u>, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context.  <u>Ghana v. Holland</u>, 226 F.3d 175 (3d Cir. 2000).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." <u>Punnett v. Carter</u>, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly.  <u>United States v. Price</u>, 688 F.2d 204, 212 (3d Cir. 1982).  Indeed, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." <u>Goff v. Harper</u>, 60 F.3d 518 (3d Cir. 1995).

In addition, to the extent that Breeland seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this

extraordinary relief.   With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443.  Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest.  Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir.2001)).

## B.   Breeland is Not Entitled to a Preliminary Injunction

Judged against these exacting standards, in their current form, Breeland's various motions for injunctive relief fail.  At the outset, we note that in the past, inmates have frequently sought preliminary injunctive relief similar to that demanded by Breeland here, compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit.  Yet, such requests, while often made, are rarely embraced by the courts.  Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for injunctive relief as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits.  Thus, courts have rejected inmate requests for injunctions mandating specific housing conditions for prisoners.  See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction). Similarly, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; Rivera v. Pennsylvania Dep't. Of

<u>Corrections</u>, 346 F. App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services,</u>

<u>Inc.</u>, 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits.

<u>Quinn v. Palakovich</u>, 204 F. App'x 116 (3d Cir. 2006).  Furthermore, inmates have in

the past often invited federal courts to entertain preliminary injunctions directing their

jailers to allow them greater access to legal materials.  Yet, these requests, while

frequently made, have rarely been embraced by the courts.  <u>See, e.g., Kershner v.</u>

<u>Mazurkiewicz, supra</u>; <u>Edmonds v. Sobina</u>, 296 F. App'x 214, 216 n.3 (3d Cir. 2008);

<u>Barnes v. Quattlebaum</u>, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009);

<u>Clay v. Sobina</u>, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); <u>Wesley v.</u>

<u>Vaughn</u>, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001).  In all of these

instances, courts have consistently declined inmate invitations to become embroiled

in prison management issues.

In this case, our review of the plaintiff's motions for injunctive relief lead us to

conclude that Breeland has not made the demanding showing required for this

extraordinary form of relief.  Indeed, in our view, the current, broadly-framed, requests

for injunctive relief fail for at least five reasons.

1.    **Breeland Has Not Shown an Entitlement to Injunctive Relief Against Non-Parties**

First, in this case Breeland seeks wide-ranging injunctive relief against officials at SCI Camp Hill, prison officials who are not parties to this litigation.  Yet, Breeland has not made the threshold showing required for injunctive relief from non-parties, which is what he seeks here.  Thus, he has not shown that these non-parties are

" acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)."  Elliott v. Kiesewetter,  98 F.3d 47, 56 (3d Cir. 1996).  Since Breeland has not made this initial showing, he is not entitled in this action to enjoin persons who are not parties in this litigation.  Rather, if Breeland believes he is aggrieved by officials at SCI Camp Hill, he should bring a properly framed civil action against those officials.  Breeland may not, however, use this lawsuit, which relates to a specific and isolated incident at SCI Smithfield in September of 2011, to attempt to broadly enjoin the conduct of correctional staff at other facilities throughout the Pennsylvania Department of Corrections.

2.    **Breeland Has Not Met the Other Procedural Prerequisites for Injunctive Relief**

Second, Breeland's motions do not address the demanding preliminary procedural standards prescribed by caselaw and statute for such injunctions, in that he does not present a prayer for relief which is "narrowly drawn, extend[s] no further than

necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2).  Indeed, Breeland's various prayers for relief are cast broadly and would invite the court to broadly intervene in prison transfer, housing, discipline, medical and grievance issues, something we are cautioned against doing.  Similarly, Breeland's pleadings do not reveal that this inmate has exhausted his administrative remedies within the corrections system with respect to the matters cited in these motions.  Since § 1997e's exhaustion requirement requires inmates to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context, Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000), the failure to exhaust these remedies precludes consideration of these motions for injunctive relief at this time.

### 3.      Breeland Has Not Shown a Likelihood of Success on the Merits

Third, we find that Breeland has not yet met his threshold obligation of showing reasonable probability of success on the merits.  Indeed, Breeland faces a demanding burden of proof on the merits of these various claims.

For example, to the extent that Breeland appears to request an order directing that he be transferred to some other prison, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). Thus, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5thCir. 1995); Marchesani

v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846 (1976). Simply put, as a legal matter Breeland has no constitutional right to choose his prison, or compel a transfer to another institution. Therefore, he may not use a motion for preliminary injunction as a vehicle to choose his place of confinement, or direct a prison transfer, at the outset of this litigation. Given these existing legal impediments to Breeland's prison transfer claims, we cannot find that Breeland has shown a likelihood of success on the merits of this particular claim for injunctive relief.

Nor has Breeland shown that he is likely to succeed on the merits of his various medical complaints against correctional staff at SCI Camp Hill. Breeland faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Breeland must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Breeland is required to allege facts that demonstrate:  (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197

(3d Cir. 1999).   Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.   Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation   Estelle, 429 U.S. at 106.   "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."   Durmer, 991 F.2d at 67 (citations omitted).   Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").   Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown

v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does

mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994).  Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa.

1997)(citations omitted).  In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment.  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, also frequently define the availability of preliminary injunctive relief in such cases.  State inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to provide them with specially tailored treatment protocols.  Yet, these requests, while frequently made, have rarely been embraced by the courts.  Rivera v. Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008); Quinn v. Palakovich, 204 F.App'x 116 (3d Cir. 2006).

In this case, the defendants have responded to Breeland's motions for preliminary injunction by detailing the close medical and psychiatric oversight that prison officials are exercising in Breeland's case, and by describing the efforts being undertaken by correctional staff to ensure Breeland's continued access to the courts. (Docs. 53 and 54.) These records reveal that Breeland has been seen by medical and psychiatric staff at the prison on approximately 30 occasions over the past six months,

and further disclose that medical staff stand ready to immediately address any of Breeland's medical and mental health needs. (Id.) Given the evidence submitted by the defendants, it appears that much of Breeland's argument in support of his motion for preliminary injunction amounts to little more than a disagreement between an inmate and doctors over alternate treatment plans, which, as a matter of law, fails as a constitutional claim. See, e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same). Thus, Breeland has not shown that he is likely to prevail on the merits of these medical care claims.

Finally, with respect to the likelihood of Breeland's success in demanding greater access to the prison law library, we note that inmates have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to allow them greater access to legal materials. Yet, these requests, while frequently made, have rarely been embraced by the courts. See, e.g., Kershner v. Mazurkiewicz, supra; Edmonds v. Sobina, 296 F.App'x 214, 216 n. 3 (3d Cir. 2008); Barnes v. Quattlebaum, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009); Clay v. Sobina, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); Wesley v. Vaughn,

No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001).  Therefore, Breeland has

failed to show a likelihood of success on the merits of this claim as well.

**4.    Where The Only Potential Irreparable Harm Disclosed
by the Pleadings is Harm That the Plaintiff May Inflict
Upon Himself, a Harm That Prison Officials Are
Actively Working to Prevent, the Plaintiff Has Not
Shown an Entitlement to Injunctive Relief**

Entirely aside from the fact that Breeland has not shown a likelihood of success

on the merits, the first prerequisite for injunctive relief, we find–as many other courts

have found when presented with similar complaints–that this inmate has not shown

at this time shown that a preliminary injunction is needed to prevent some immediate

irreparable harm.  This case presents an unusual scenario with respect to this element

of irreparable harm, since the only irreparable harm disclosed by the pleadings is a risk

that the plaintiff may harm himself.  Thus, we are asked by the plaintiff to enjoin

others based upon a showing that the plaintiff may indulge in some form of self-

inflicted harm despite the ongoing efforts of prison staff to protect him from himself.

This we cannot do.  "If the harm complained of is self-inflicted, it does not

qualify as irreparable.  *See* 11A Charles A. Wright, Arthur R. Miller and Mary Kay

Kane, *Federal Practice & Procedure* § 2948.1 pp. 152–53 (1995)." Caplan v.

Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 839 (3d Cir. 1995). See Salt

Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1106 (10th Cir.

2003)("We will not consider a self-inflicted harm to be irreparable" citing <u>Caplan v.</u>

<u>Fellheimer Eichen Braverman & Kaskey</u>, 68 F.3d 828, 839 (3d Cir.1995); <u>Lee v.</u>

<u>Christian Coalition of America, Inc</u>., 160 F.Supp.2d 14, 33 (D.D.C.2001); 11A

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice &</u>

<u>Procedure</u> § 2948.1, at 152–53 (2d ed.1995)).  Since Breeland may not rely upon the

threat of self-inflicted injuries to satisfy this element of his proof in support of these

motions for preliminary injunction, and the record otherwise discloses that prison

officials are actively working to prevent Breeland from harming himself, we conclude

that Breeland has not made the type of harm showing necessary to compel the courts

to prescribe a treatment plan for this state prisoner.  <u>See e.g.</u>, <u>Rivera v. Pennsylvania</u>

<u>Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for

injunction against care-givers); <u>Rush v. Correctional Medical Services, Inc</u>., 287 F.

App'x 142 (3d Cir. 2008)(same).

### 5.   Other Interests Could Be Harmed By Granting The Request for Preliminary Injunction

Finally, we note that granting these requests for injunctive relief, which would

effectively have the federal courts making *ad hoc*, and individual, decisions

concerning the treatment of a single prisoner, could harm both the defendants' and the

public's interest.  In this prison context, the defendants' interests  and the public's

interest in penological order could be adversely effected if the court began dictating

the transfer or treatment for the plaintiff, one inmate out of thousands treated in the federal prison system.  Given that an inmate's request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration," Goff v. Harper, 60 F.3d 518 (3d Cir. 1995), the relief sought here–which would order particular, specialized treatment for a single prisoner–could adversely affect "the complex and intractable problems of prison administration" Id.  Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against Breeland in this case.

Because Breeland has not carried his burden of proving either a reasonable probability of ultimate success on the merits, or immediate and irreparable harm, and because granting these injunctions could adversely effect the defendants' and the public's interests, these requests for preliminary injunctions (Docs. 43, 46, 63, and 64.), should be denied without prejudice to later efforts by Breeland to file properly documented requests for injunctive relief.

### III.  **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the motions for preliminary injunction, (Docs. 43 and 46.), and motions for relief from retaliation and

for sanctions (Docs. 63 and 64.), IT IS RECOMMENDED that the motions be DENIED without prejudice to later efforts by Breeland to file properly documented requests for injunctive relief.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of July 2012.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge